# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| In re: Gluth Bros. Construction,<br><br>Debtor(s). | Bankruptcy No. 08 B 73908<br>Adversary No. 09-A-96131<br>Chapter 11<br>Judge Manuel Barbosa |
| Charles Dixon and Charles Graber, Jr., not in their individual capacities but solely as Trustees of the Gluth Bros. Construction, Inc. Creditor Trust,<br>            Plaintiff(s),<br>v.<br>Frank Gluth, individually,<br>            Defendant(s). | |

## MEMORANDUM OPINION

This matter comes before the Court on the motion for payment of administrative expenses filed by Frank Gluth, individually ("Gluth"), pursuant to 11 U.S.C. § 503(b), on April 7, 2009, and the motions to consolidate the objections to Gluth's administrative claim with Gluth's adversary proceeding filed by Gluth, pursuant to Federal Rule of Civil Procedure 42 made applicable through Federal Rule of Bankruptcy Procedure 7042(a), on July 16, 2009. For the reasons set forth herein, the Court denies Gluth's motion for payment of administrative expenses and denies Gluth's motions to consolidate.

## JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## **FACTS AND BACKGROUND**

On March 14, 2000, debtor Gluth Bros. Construction, Inc. ("Debtor") executed a promissory note for $2,000,000, payable to the American Community Bank & Trust ("Bank"), including interest and fees (the "Note"). On January 1, 2004, Debtor and the Bank entered into a change in terms agreement where, inter alia, Frank Gluth ("Gluth") personally guaranteed Debtor's payment of the Note. On April 6, 2006, Debtor, Gluth, and the Bank entered into a change in terms agreement whereby Gluth became co-obligor of Debtor's obligations under the Note. On the same date, Gluth, Debtor and the Bank entered into a Commercial Pledge Agreement in which Gluth granted a security interest to the Bank in "American Community Bank & Trust Wealth Management Investment Account #3R5-952278." This agreement secured Debtor's and Gluth's joint and several obligations under the Note.

On June 5, 2007, Debtor filed a voluntary Chapter 11 bankruptcy petition. Debtor operated its business and managed its property as a Debtor-in-Possession, pursuant to 11 U.S.C. §§ 1107(a), 1108. On June 6, 2007, Debtor filed an "emergency motion to obtain/incur credit for post-petition unsecured financing." The motion sought to allow Debtor to obtain post-petition unsecured financing from Gluth. In an order dated June 25, 2007, the Court granted Debtor's emergency motion to obtain credit and incur debt for post-petition unsecured financing. Pursuant to the June 25, 2007 order, Gluth may advance post-petition unsecured financing to Debtor, not to exceed $200,000, until further order of the Court or confirmation of a Plan whichever occurred first. Furthermore, the June 25, 2007 order held that "determination of whether the loans are entitled to priority shall remain subject to further order of Court."

In an order dated July 11, 2007, the Court granted application to employ Freeborn & Peters LLP as counsel for the Official Committee of Unsecured Creditors ("UCC"). Debtor filed

its first Chapter 11 Plan of Reorganization and Disclosure Statement on April 30, 2008. On January 27, 2009, Debtor filed its second Chapter 11 Plan of Reorganization and Disclosure Statement. Debtor filed a modified Chapter 11 Plan of Liquidation and an amended disclosure statement on February 11, 2009. On February 27, 2009, the UCC filed proposed findings of fact and conclusions of law under 11 U.S.C. § 1129(a), (b) and Federal Rule of Bankruptcy Procedure 3020 to confirm Debtor's Plan of Liquidation, dated January 27, 2009. In exhibit B to the UCC's proposed findings of fact and conclusions of law, the UCC attached the Gluth Bros. Construction, Inc. Creditor Trust Agreement, which established Charles Dixon and Charles Graber, Jr., not in their individual capacities, but, solely as trustees (collectively, the "Creditor Trustees") of the Gluth Bros. Construction, Inc. Creditor Trust.

In an order dated March 4, 2009, the Court approved the disclosure statement and confirmed Debtor's Plan of Liquidation dated January 27, 2009 ("Plan"). Pursuant to the Plan and the Gluth Bros. Construction, Inc. Creditor Trust Agreement, all remaining property of the Debtor's estate vested in the Creditor Trust, and the Creditor Trustees were granted authority to object to administrative claims. The effective date of the Plan occurred on March 18, 2009. In a notice filed March 20, 2009, the UCC set a bar date to file an application with the Court for allowance of administrative claims until not later than twenty (20) days after the Plan's effective date.

On April 7, 2009, Gluth, the Debtor's sole shareholder, submitted a request for the allowance and payment of $1,555,364.16 for Chapter 11 administrative expenses. In the $1,555,364.16 claim, Gluth sought the following priority reimbursements: (1) $1,051,754.30 for payments made to the Bank, including interest and fees; (2) $445,109.86 in post-petition loans made to Debtor; (3) $7500 in payments made to Westbend Mutual Insurance Co., regarding

EBCO; and (4) $51,000 for unpaid salary earned during the Chapter 11 case.

On May 7, 2009, the Creditor Trustees filed their objection to Frank Gluth's request for payment of administrative expenses. The Creditor Trustees assert that Frank Gluth failed to meet the standards set forth under 11 U.S.C. § 503 for approval of administrative expense claims. First, the Creditor Trustees assert that Gluth failed to provide any support for his request. Second, the Creditor Trustees state that Gluth's loans to Debtor are not entitled to administrative expense priority because the Court's June 25, 2007 order only authorized Gluth to advance post-petition unsecured financing to Debtor in an amount not to exceed $200,000; Gluth has not demonstrated that the loans benefited Debtor's estate; and, instead, Gluth's actions allegedly caused Debtor to fail to reorganize and "die[] a slow death while Gluth attempted to abscond with the Debtor's assets." Third, the Creditor Trustees argue that Gluth's payments to the Bank were to discharge his own personal debt, rather than benefit the estate, because Gluth became co-obligor on Debtor's $2,000,000 debt to the Bank by an agreement dated April 6, 2006. Fourth, the Creditor Trustees proffer that Gluth's $7500 settlement payment to West Bend, pursuant to the Court's compromise order dated May 27, 2009, was for a personal release from claims, was post-confirmation, and did not benefit the estate. Fifth, the Creditor Trustees assert that Gluth's claims for wages are not entitled to administrative expense priority because Gluth provided no proof that his actions benefited the estate, and, instead, the Creditor Trustee alleges that Gluth stole and concealed assets.

In an order dated May 27, 2009, the Court granted a motion to compromise, pursuant to Rule 9019, between Debtor, EBCO Construction, LLC ("EBCO"), formerly known as EBCO Construction Group LLC, and West Bend Mutual Insurance Company regarding claim number 71. The May 27, 2009 order held that "Debtor, successors in interest to Debtor, Debtor's

bankruptcy estate, and Frank Gluth are hereby released and forever discharged from any and further liabilities and obligations to EBCO and/or West Bend (a) arising under or in connection with any of the Agreements and/or (b) for administrative expenses under § 503(b)(1)(A)." In exchange for this release, the May 27, 2009 order further held that "Frank Gluth shall pay Seven Thousand Five Hundred Dollars ($7,500.00) to West Bend within twenty (20) business days after the date of this Order."

On July 16, 2009, in both Debtor's bankruptcy and adversary number 09-A-96131, Gluth filed motions to consolidate the Creditor Trustee's objection to his administrative expense claim with adversary number 09-A-96131. On July 21, 2009, the Creditor Trustees filed responses in opposition to Gluth's motions for consolidation.

## DISCUSSION

### I.    Administrative Expenses, 11 U.S.C. § 503

Pursuant to 11 U.S.C. § 503(b), Gluth seeks allowance for an administrative claim of $1,555,364.16 for incurred expenses allegedly necessary for preserving the estate, including loans approved by the Court, loans not approved by the Court, wages, payment of secured obligations and vendor claims.

Section 507(a)(1) of the Bankruptcy Code grants first priority in the distribution of the assets of a bankruptcy estate to administrative expenses allowed under 11 U.S.C. § 503(b). In re Nat'l Steel Corp., 316 B.R. 287, 299 (Bankr. N.D. Ill. 2004) (citing 11 U.S.C. § 507(a)(1)). Administrative expense claims are governed by section 503(b) of the Bankruptcy Code, which provides, in pertinent part, "(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including--(1)(A) the actual, necessary costs and expenses of preserving the estate[.]" 11 U.S.C. § 503(b)(1)(A). "[A]

claim will be afforded priority under § 503 if the debt both (1) 'arise[s] from a transaction with the debtor-in-possession' and (2) is 'beneficial to the debtor-in-possession in the operation of the business.'" In re Jartran, Inc., 732 F.2d 584, 587 (7th Cir. 1984) (quoting In re Mammoth Mart, Inc., 536 F.2d 950, 954 (1st Cir. 1976)). The moving party bears the burden of proving that its claim is entitled to administrative expense priority and the standard of proof is a preponderance of the evidence. In re Nat'l Steel Corp., 316 B.R. at 300 (citations omitted).

To qualify as actual and necessary expenses, expenditures must benefit the estate as a whole. Id. (citing In re Jartran, Inc., 886 F.2d 859, 871 (7th Cir.1989)). Accordingly, claims pursuant to section 503(b)(1)(A) shall be measured by the benefit received by the estate, rather than the costs incurred by a claimant. Id. (citing DeMert & Dougherty, 227 B.R. 508, 513 (Bankr. N.D. Ill. 1998)). If a creditor incurred expenses acting in its own interest, however, it is not entitled to an administrative expense. Id. (citing In re Cheatle, 150 B.R. 266, 269 (Bankr. D. Colo. 1993)). Thus, the focus for purposes of determining a benefit to the estate turns on actual benefits conferred upon the estate, not losses sustained by the creditor. Id. at 302 (citing Cargill Fin. Servs. Corp., IDS v. Envirodyne Indus., Inc., No. 94 C 6950, 1995 WL 461854, at *3 (N.D. Ill. July 12, 1995)).

### A. Gluth's Payment of $1,051,754.30 for the Debt Owed to the Bank

Gluth seeks administrative expense priority for $1,051,754.30 that he allegedly used to pay debt owed to the Bank.

On March 14, 2000, Debtor executed the Note for $2,000,000, payable to the Bank, including interest and fees. Subsequently, on January 1, 2004, Debtor and the Bank entered into a change in terms agreement where Gluth personally guaranteed Debtor's payment of the Note. On April 6, 2006, Debtor, Gluth, and the Bank entered into another agreement change whereby

Gluth became co-obligor of Debtor's obligations under the Note. On the same date, Gluth, Debtor and the Bank entered into a Commercial Pledge Agreement in which Gluth granted a security interest to the Bank in an investment account. This agreement secured Debtor's and Gluth's joint and several obligations under the Note.

As an initial matter, Gluth has provided no proof that $1,051,754.30 in payments to the Bank were actually made. In his administrative expense request, Gluth failed to describe or submit any evidence to support the transactions. After the Creditor Trustees filed their objection to Gluth's request for payment of administrative expenses on May 7, 2009, Gluth did not respond to the objection or support any of these transactions with the Bank. Most importantly, Gluth personally guaranteed these Bank loans and, on April 6, 2006, pre-petition, became co-obligor on the Note. Thus, rather than benefit the estate, these payments discharged Gluth's own personal debt and were not a transaction induced by a debtor-in-possession. Therefore, the Court denies administrative expense priority for Gluth's payments to the Bank.

### B. Gluth's $445,109.86 in Post-Petition Loans Made to Debtor

Gluth seeks administrative expense priority for $445,109.86 that he allegedly loaned to Debtor post-petition.

On June 6, 2007, Debtor filed an "emergency motion to obtain/incur credit for post-petition unsecured financing." The motion sought to allow Debtor to obtain post-petition unsecured financing from Gluth. In an order dated June 25, 2007, the Court granted Debtor's emergency motion to obtain credit and incur debt for post-petition unsecured financing. The June 25, 2007 order held that Gluth may advance post-petition unsecured financing to Debtor, not to exceed $200,000, until further order of the Court or confirmation of a Plan whichever occurred first. The June 25, 2007 order also held that "determination of whether the loans are

entitled to priority shall remain subject to further order of Court." The Plan confirmed on March 4, 2009 and no further order of Court has allowed Gluth to advance post-petition unsecured financing to Debtor.

At a minimum, pursuant to June 25, 2007 order and the Plan confirmation on March 4, 2009, any loans made in excess of $200,000 are not entitled to administrative expense priority. Moreover, after ample opportunity, Gluth has failed to demonstrate how the loans benefited Debtor's estate. As stated previously, Gluth failed to describe or submit any evidence to support the transactions in his administrative request. Even after the Creditor Trustees filed their objection to Gluth's request for payment of administrative expenses on May 7, 2009, Gluth ignored any attempt to respond to the objection or support any of these transactions. In a hearing dated May 27, 2009, Gluth's counsel requested thirty days to respond and the Court granted until June 26, 2009 for Gluth to file a response to the Creditor Trustees' objection. At the next status hearing on July 15, 2009, without any response filed by Gluth, the Court held that there would be no further pleading on the matter and that the Court would rule on its merits. Accordingly, the Court finds that Gluth has not met his burden of proving that the $445,109.86 claim for alleged loans to Debtor post-petition is entitled to administrative expense priority.

### C. Gluth's $7500 Payment to West Bend Mutual Insurance Company for EBCO Settlement

Gluth seeks administrative expense priority for $7500 that he paid to West Bend Mutual Insurance Company ("West Bend") for the EBCO settlement.

The Plan confirmed on March 4, 2009. In a subsequent order dated May 27, 2009, the Court granted a motion to compromise, pursuant to Rule 9019, between Debtor, EBCO, and West Bend regarding claim number 71. The May 27, 2009 order held that "Debtor, successors in interest to Debtor, Debtor's bankruptcy estate, and Frank Gluth are hereby released and forever

discharged from any and further liabilities and obligations to EBCO and/or West Bend (a) arising under or in connection with any of the Agreements and/or (b) for administrative expenses under § 503(b)(1)(A)." In exchange for this release, the May 27, 2009 order further held that "Frank Gluth shall pay Seven Thousand Five Hundred Dollars ($7,500.00) to West Bend within twenty (20) business days after the date of this Order."

In exchange for the $7500, Gluth received a personal release. Debtor, however, did not receive any benefit for Gluth's payment to West Bend. Gluth's $7500 claim does not qualify as actual and necessary expenses because expenditures must benefit the estate as a whole. In re Nat'l Steel Corp., 316 B.R. at 300 (citing In re Jartran, Inc., 886 F.2d at 871 (7th Cir.1989)). Claims, pursuant to section 503(b)(1)(A), shall be measured by the benefit received by the estate, rather than the costs incurred by a claimant. Id. (citing DeMert & Dougherty, 227 B.R. at 513). Thus, since Gluth incurred expenses acting in its own interest, he is not entitled to an administrative expense. Id.

### D. Gluth's $51,000 Claim for Post-Petition Wages

Gluth seeks administrative expense priority for $51,000 in post-petition wages. The Creditor Trustees oppose this request and assert that administrative expense priority should be denied because Gluth stole and concealed Debtor assets, rather than benefited the estate. The Creditor Trustees specifically allege that Gluth erased computer files containing Debtor's accounting records, failed to turnover $150,000 in Debtor's equipment, left Debtor's facilities in "shambles," and, among other things, removed Debtor's personal property. As stated previously, after ample opportunity, Gluth failed to describe or submit any evidence to support the wages in his administrative request. In light of the Creditor Trustees' allegations, Gluth has provided no justification for his wages. Debtor failed to reorganize under Chapter 11 and has subsequently

converted to Chapter 7. For all of the reasons stated herein, Gluth met his burden of proof and is not entitled to an administrative expense on his wages.

## II. Motions to Consolidate

On July 16, 2009, in both Debtor's bankruptcy and adversary number 09-A-96131, Gluth, pursuant to Federal Rule of Civil Procedure 42(a) made applicable through Federal Rule of Bankruptcy Procedure 7042, filed motions to consolidate the Creditor Trustee's objection to his administrative expense claim with adversary number 09-A-96131. On July 21, 2009, the Creditor Trustees filed responses in opposition to Gluth's motions for consolidation.

A motion under Federal Rule of Civil Procedure 42(a) to consolidate cases should only be granted if there are common questions of law or fact in the pending motions. Mabry v. Vill. Mgmt., Inc., 109 F.R.D. 76, 79 (N.D. Ill. 1985) (citing Fed. R. Civ. P. 42(a); Midwest Cmty. Council v. Chicago Park Dist., 98 F.R.D. 491, 499 (N.D. Ill. 1983)). The primary purpose of consolidation is to promote convenience and judicial economy. Id. (citing Midwest Cmty. Council, 98 F.R.D. at 499). It lies within the sound discretion of the court to decide whether to consolidate actions. Official Unsecured Creditors' Committee of Hearthside Baking Co., Inc. v. Cohen (In re Hearthside Baking Co., Inc.), 391 B.R. 807, 819 (Bankr. N.D. Ill. 2008) (citing United States v. Knauer, 149 F.2d 519, 520 (7th Cir. 1945), aff'd, 328 U.S. 654, 66 S. Ct. 1304, 90 L. Ed. 1500 (1946)).

Both the adversary complaint and the administrative expense claim in the bankruptcy matter share some common factual issues. The factual issues in the Creditor Trustees' objection to Gluth's administrative claim provide background relating to Gluth's alleged stealing and concealing of Debtor's assets, which were alleged in the adversary complaint. The main consolidation issue surrounds the Creditor Trustees' count IX of their adversary complaint which

requested "Equitable Subordination Pursuant to Section 510 of the Bankruptcy Code and/or Recharacterization of Debt as Equity, and Disgorgement." Thus, in the adversary complaint, the Creditor Trustees sought to disgorge payments made to Gluth on behalf of Gluth's administrative claim. This equitable subordination claim, however, becomes moot because, as stated previously, the Court denied Gluth's administrative expense claim. In addition, the Court finds that Gluth waived his opportunity to respond to the Creditor Trustees' objection to his administrative expense claim. See Wojtas v. Capital Guardian Trust Co., 477 F.3d 924, 926 (7th Cir. 2007); Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041 (7th Cir. 1999); McDonald v. Snyder, No. 02 C 8581, 2003 WL 22427797, at *1 (N.D. Ill. Oct. 23, 2003) ("[S]ince defendants failed to file a reply by the court's deadline, the court deems it waived."). Therefore, the Court denies Gluth's motions to consolidate.

**CONCLUSION**

For the foregoing reasons, the Court denies Gluth's motion for payment of administrative expenses and denies Gluth's motions to consolidate.

THEREFORE, IT IS ORDERED that the foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE: August 12, 2009

The Honorable Manuel Barbosa
United States Bankruptcy Judge