UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| In re Gluth Bros. Construction, Inc., <br><br>        Debtor. <br>--- <br>Charles Dixon and Charles Graeber, Jr., not in their individual capacities but solely as Trustees of the Gluth Bros. Construction, Inc. Creditor Trust, <br><br>        Plaintiff, <br><br>v. <br><br>Frank Gluth, <br><br>        Defendant. | Bankruptcy No. 07-B-71375 <br>Adversary No. 09-A-96131 <br>Chapter 11 <br>Judge Manuel Barbosa |

## MEMORANDUM OPINION

This matter comes before the Court on the motion of the trustees of the Gluth Bros. Construction, Inc. Creditor Trust to compel American Community Bank and Trust to release its mortgage. For the reasons set forth herein, the Creditor Trustees' motion is GRANTED.

## JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (C), (E), (K), and (O).

## FACTS AND BACKGROUND

At issue in this case is a mortgage in favor of American Community Bank and Trust (the "Bank") on several parcels of real estate and whether the Bank was required by the Illinois Mortgage Act, 765 Ill. Comp. Stat. 905/2, to release the mortgage when it received payment of the outstanding balance of the loan.

In March 2000, the Bank loaned $2,000,000 to Gluth Brothers Construction, Inc. ("Gluth Bros."), a corporation solely owned and operated by Frank Gluth. The loan was secured by certain business assets of Gluth Bros. The loan initially had a 15.5 month term, but was subsequently extended annually pursuant to change in terms agreements, with the final extension through December 2007. Pursuant to a change in terms agreement in 2002, the principal was reduced to $1,000,000, and was increased back up to $2,000,000 in 2005. In connection with the 2004 extension, Gluth Bros. agreed to procure a personal guarantee from Frank Gluth. In connection with the 2006 and subsequent extensions, Frank Gluth signed as a co-borrower and pledged a security interest in certain of his property. In August 2007, Frank Gluth granted a mortgage (the "Mortgage") and an assignment of rents to the Bank in two parcels of land with three Property Identification Numbers located at 1151 Lake Avenue that Frank Gluth owned individually (the "Gluth Land"). The Mortgage secured all indebtedness of both Frank Gluth and Gluth Bros. to the Bank.

On June 5, 2007, Gluth Bros. filed a petition for protection under Chapter 11 of the Bankruptcy Code with this Court. On September 12, 2007, the Court authorized an auction of certain equipment and other business assets of Gluth Bros. The auction was held, and on November 5, 2007, the Court entered an order directing Gluth Bros. to turn over a portion of the auction

proceeds to the Bank. The order included a statement that the order was "without prejudice to any and all rights and claims the Debtor's estate or creditor's committee may have against American Community Bank and Trust or otherwise." On November 9, 2007, Gluth Bros. remitted $980,558.52 out of the auction proceeds to the Bank in accordance with the November 5 order. Between November 9, 2007, and January 2, 2008, Frank Gluth repaid the remaining balance of the loan to the Bank out of his own funds. On January 2, 2008, the Bank stamped its internal copies of the Mortgage, assignment of rents, promissory note and each change in terms agreement with a "PAID" stamp. However, the Bank did not deliver a release of mortgage to Frank Gluth or Gluth Bros. or file any release of the Mortgage or assignment of rents with the county recorder.

On March 4, 2009, the Court entered an order confirming a plan of liquidation in the Gluth Bros. case which vested all assets of Gluth Bros. in a creditor trust. On June 4, 2009, the trustees for the Gluth Bros. Creditor Trust[1] filed an adversary proceeding against Frank Gluth, asserting several preference and fraudulent transfer claims. On August 11, 2010, the Creditor Trust obtained a default judgment against Frank Gluth for $2,087,090.10 plus attorneys' fees, costs and interest. On September 14, 2010, the judgment was amended to incorporate prejudgment interest and attorneys' fees and costs, increasing the judgment to $2,593,970.70 plus post-judgment interest. Through a citation to discover assets and other collection efforts, the Creditor Trust obtained title to the Gluth Land from Frank Gluth in partial satisfaction of the Creditor Trust's judgment against him. Upon learning that the Bank had a recorded mortgage on the Gluth Land but that the underlying debt had been paid in full, the Creditor Trust demanded that the Bank release the

---

[1] For simplicity, the liquidating trust and the trustees on behalf of the trust will collectively be referred to as the "Creditor Trust."

Mortgage so that the Creditor Trust could take steps to sell the Gluth Land without a cloud on its title. The Bank refused, and the Creditor Trust filed this motion to compel.

## DISCUSSION

The Illinois Mortgage Act provides, with certain exceptions, that "every mortgagee of real property, his assignee of record, or other legal representative, having received full satisfaction and payment of all such sum or sums of money as are really due to him from the mortgagor ... shall make, execute and deliver to the mortgagor ... his heirs, legal representatives or assigns, an instrument in writing releasing such [mortgage] or shall deliver that release to the recorder or registrar for recording or registering." 765 Ill. Comp. Stat. Ann. 905/2 (West 2011). The statute further provides that:

> If any mortgagee ... of real property, or his executor or administrator, heirs or assigns, knowing the same to be paid, shall not, within one month after the payment of the debt secured by such [mortgage], comply with the requirements of Section 2 of this Act, he shall, for every such offense, be liable for and pay to the party aggrieved the sum of $200 which may be recovered by the party aggrieved in a civil action, together with reasonable attorney's fees. In any such action, introduction of a loan payment book or receipt which indicates that the obligation has been paid shall be sufficient evidence to raise a presumption that the obligation has been paid. Upon a finding for the party aggrieved, the court shall order the mortgagee or trustee, or his executor or administrator, heirs or assigns, to make, execute and deliver the release as provided in Section 2 of this Act.

765 Ill. Comp. Stat. 905/4 (West 2011). The Mortgage itself also had a provision stating that "If [Gluth Bros.] and [Frank Gluth] pay all the Indebtedness when due, and [Frank Gluth] otherwise performs all the obligations imposed upon [him] under this Mortgage, [the Bank] shall execute and deliver to [Frank Gluth] a suitable satisfaction of this Mortgage." (Mot. to Compel Ex. C, at 8, ECF

No. 81).

A.  The Creditor Trust has Demonstrated Satisfaction of the Mortgage

The Bank does not deny that it never filed a release of the Mortgage and never sent a release to Frank Gluth or to the Creditor Trust. Nor does the Bank deny that, as of January 2, 2008, when it stamped its copies of the Gluth Bros. loan documents "PAID," it had been paid all currently outstanding obligations from Gluth Bros. and Frank Gluth. Instead, the Bank argues that the Mortgage was never "satisfied" because the Mortgage and loan documentation had certain indemnification provisions as well as a provision 'reinstating the mortgage' if the Bank was subsequently forced to remit or disgorge any payment back to a bankruptcy trustee or similar party. Specifically, the provision on "reinstatement of security interest" provides:

> If payment is made by [Gluth Bros. or Frank Gluth], whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (A) to [Gluth Bros. or Frank Gluth]'s trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (B) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (C) by reason of any settlement or compromise of any claim made by Lender with any claimant (including without limitation [Gluth Bros. or Frank Gluth]), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Mortgage and this Mortgage shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Mortgage or of any note or other instrument or agreement evidencing the Indebtedness and the Property will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and [Frank Gluth] shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Mortgage.

(Mot. to Compel Ex. C, at 8, ECF No.81).

The Bank claims that the potential for such future disgorgement is a real possibility, since the Creditor Trust has filed an adversary proceeding against the Bank which includes claims to avoid

preferential transfers, among other claims, and which is still pending. However, other than such potential future claims, the Bank has identified no amount which was outstanding from Frank Gluth or Gluth Bros. to the Bank as of January 2, 2008, and has identified no amount which is outstanding as of today's date.

The Bank argues for an expansive interpretation of the term "satisfaction" as used in the statute to include any future obligation, whether currently existing or afterward arising, whether determined or not determined, absolute or contingent, liquidated or unliquidated. However, while satisfaction of a mortgage may require performance of certain non-monetary obligations, case law is clear that the emphasis is on payment of monetary obligations. For example, in Franz v. Calaco Dev. Corp., the appellate court noted that "the statute itself does not provide for any excuse. Nor does it provide that, before obtaining a release, a mortgagor must fulfill any obligations other than payment of the debt secured by the mortgage." 352 Ill. App. 3d 1129, 1150, 818 N.E.2d 357, 377 (Ill. App. Ct. 2004) (emphasis added). The court went on to note that "the Mortgage Act unambiguously requires a mortgagee to release his mortgage upon receiving full payment under the mortgage, and it unambiguously gives a mortgagor a right to damages where the mortgagee does not comply." Id. Additionally, the statute itself states that "introduction of a loan payment book or receipt which indicates that the obligation has been paid shall be sufficient evidence to raise a presumption that the obligation has been paid." 765 Ill. Comp. Stat. Ann. 905/4 (West 2011) (emphasis added). The Court will not go so far as to say that an unfulfilled non-payment obligation will never give a mortgagee a right to refuse to release a mortgage, but certainly the type of uncertain, possible, future obligation that the Bank asserts in this case will not suffice. Were it

otherwise, any lender could avoid the effect of the statute by simply putting into every mortgage some sort of broad indemnity clause for future 'damages,' and then claim that no mortgage is ever 'satisfied' because there is always the possibility that the indemnification provision will be triggered some time in the future. The purpose of the Mortgage Act "is to allow the mortgagor to obtain a release when the terms of the mortgage have been fully satisfied." Am. Garden Homes, Inc. v. Gelbart Fur Dressing, 238 Ill. App. 3d 64, 67, 606 N.E.2d 106, 109 (Ill. App. Ct. 1992). This protects borrowers, and also protects the free alienability of land. It would clearly be against the purpose of the Act to allow lenders to forever cloud title to mortgaged property by throwing in an empty provision and asserting speculative future obligations. Cf. id. ("Meadow Lane Partnership realty has been held hostage for over 10 years due to the attempt to impose [a narrow interpretation of the scope of the Act]."). In any case, in accordance with the statute the Creditor Trust has met its burden of demonstrating the Mortgage was satisfied by presenting evidence that the Bank received payment and marked its loan and mortgage documents as "PAID," and the Bank has failed to overcome the statutory presumption that the mortgage was paid and satisfied.

This is not to say that the Bank is without any remedy should any payments later be disgorged. Even if the Mortgage was satisfied and is released, the Bank still may have the benefit of contractual provisions in the Mortgage and note, at least against Frank Gluth individually. As noted in In re Kids Creek Partners, L.P.,"a secured party's lien and its additional rights under a mortgage agreement are separate and distinct rights" and therefore just because a lender releases a mortgage and thereby releases its property rights, it may still have contractual rights. 210 B.R. 547 (Bankr. N.D. Ill. 1997). However, unless the Bank can point to actual, current and unsatisfied

obligations of the mortgagee, the Mortgage Act will not permit it to forever cloud title to the land by refusing to issue a release.

B.    The Creditor Trust is Entitled to Relief

An initial question not raised by either party is whether the Creditor Trust has standing to assert a claim under 765 Ill. Comp. Stat. 905/4. Unlike the usual Mortgage Act case, the Creditor Trust did not grant the Mortgage to the Bank - Frank Gluth did.[2] Instead, the Creditor Trust subsequently acquired the Gluth Land from Frank Gluth through collection on its judgment against him. However, the statute does not limit its application to mortgagors. Instead, the statute creates an affirmative duty of a mortgagee to file or deliver a release of the mortgage upon payment and satisfaction, and the statute provides that "the party aggrieved" may bring a civil action to enforce that duty. 765 Ill. Comp. Stat. Ann. 905/4 (West 2011). Case law has interpreted the phrase "party aggrieved" very broadly. As the appellate court stated in Am. Garden Homes, Inc. v. Gelbart Fur Dressing:

> "Party aggrieved" is a general term allowing a broad spectrum of parties to seek relief through a civil action. The legislature intentionally chose such broad language so as not to frustrate the purpose of the Act. In order to effect its purpose, the Act should be subject to liberal interpretation. The purpose of the Act is to allow the mortgagor to obtain a release when the terms of the mortgage have been fully satisfied. Standing is determined by the basis of one's interest in the litigation, not by whether or not they have legal title to the property in question.

238 Ill. App. 3d at 67-68, 606 N.E.2d at 109 (internal citations omitted).

---

[2] Nor is the Creditor Trust a successor to the rights of Frank Gluth through the bankruptcy. The bankruptcy debtor is Gluth Bros., not Frank Gluth, and no showing has been made that Gluth Bros. was an alter-ego of Frank Gluth or that his assets should be substantively consolidated with the assets of the Gluth Bros. estate.

Even if the Creditor Trust was not the grantor of the Mortgage, it is the current owner of the Gluth Land. Its rights in the land are impaired by the Mortgage, and its ability to sell the property is hindered by the mortgage recording on file. Additionally, the Mortgage Act suggests that successors in interest to the land should be able to enforce the right of action provided by the statute, when it commands in Section 2 that a mortgagee shall deliver a release "to the mortgagor … his heirs, legal representatives or assigns." This is not to suggest that the Creditor Trust would have had standing to bring an action for an initial non-compliance with the statute while the land was owned by Frank Gluth if the Bank subsequently released the mortgage before the Creditor Trust obtained an interest in the land. Nor would the Creditor Trust have a right to reimbursement of any attorneys' fees Frank Gluth had incurred prior to the transfer of the land. But neither is the case here. The Creditor Trust now owns the land, the Mortgage still has not been released, and the Creditor Trust has had to incur costs in bringing this motion. Therefore, the Creditor Trust clearly has standing to request an order that the Bank release the Mortgage, and also to request its own attorneys' fees and costs in bringing the motion.

Somewhat less clear is whether the penalty is intended to protect only the initial grantor or also subsequent transferees. Based on the size of the penalty, the Court believes the legislature intended it to encourage aggrieved parties to bring suit, rather than as a reflection of actual damages incurred. As stated in <u>American Gardens</u>, the purpose of the Act is to allow the mortgagor to obtain a release when the terms of the mortgage have been fully satisfied. The Act provides a system whereby the mortgagee has an affirmative duty to provide a release upon payment and satisfaction of the loan rather than simply giving mortgagors a right to request a release. This demonstrates a

concern that borrowers might not be aware of their rights or might have difficulty asserting their rights, especially since they may not be motivated to seek a release until they decide to sell or transfer the property. Although the statute removes some disincentives to bringing a suit by providing for attorneys' fees and costs, aggrieved parties might still be wary of bringing suit because of the possibility that will they lose the suit or because of non-compensated costs such as time and individual effort. The $200 penalty helps to offset these disincentives to bringing a suit. Additionally, the statute specifically states that the penalty may be recovered by the "party aggrieved." In light of the broad interpretation of such term, and since the same policy and incentives would apply to a successor in interest to the land as to an original grantor, the Court finds that the Creditor Trust has a right to seek the statutory penalty.

However, the Creditor Trust argues that the statutory language should be interpreted as providing for a penalty of $200 <u>per day</u> for each day that a mortgagee fails to record or deliver a release after the one month grace period expires. The Creditor Trust argues that because the statute provides for a $200 penalty for "each such offense," the Act "contemplates an ongoing, cumulative penalty for a lender's violation of Section 2 with respect to a single mortgage." (Creditor Trustee's Reply 12, ECF No. 94).[3] However, the Court cannot accept such an interpretation, and the Creditor Trust has offered no case law supporting it. If the legislature had intended the penalty to be a *per diem* penalty, it could have easily drafted the statute to provide such a penalty. For example, in the Illinois Income Withholding for Support Act, the statute states that a payor who has been served with

---

[3] Since the statute makes no reference to days, the Court almost wonders why the Creditor Trust stopped its argument at days, rather than arguing that each minute or each second that the Bank failed to deliver or file a release constituted a separate offense.

an income withholding notice "shall pay a penalty of $100 <u>for each day</u> that the amount designated in the income withholding notice ... is not paid ... after the period of 7 business days had expired." 750 Ill. Comp. Stat. Ann. 28/35(a) (West 2011) (emphasis added). No such language appears in the Illinois Mortgage Act. Nor have courts interpreted the statute in such a manner. While the Court is not aware of any court which has specifically addressed an argument like the Creditor Trust's, which in itself is perhaps further evidence that it is contrary to the plain meaning of the statute, every court that has referred to the statutory penalty has referred to it as a single $200 per mortgage. Most notably, in <u>Franz v. Calaco Dev. Corp.</u>, the court held that, although there were multiple lots covered by the mortgage, there was "only one underlying mortgage" and therefore there was "only one offense under section 4 of the Mortgage Act. Calaco Development is entitled to the statutorily mandated $200 for the failed release of the mortgage, and no more." 352 Ill. App. 3d 1129, 1151, 818 N.E.2d 357, 377 (Ill. App. Ct. 2004); see also <u>Gutansky v. Advance Mortg. Corp.</u>, 102 Ill. App. 3d 496, 430 N.E.2d 122 (Ill. App. Ct. 1981) (upholding summary judgment granting single $200 penalty). Contrary to the Creditor Trust's contention, this plain reading of the statute does not render the phrase "each such offense" meaningless. The reference clarifies that, for example, where a single borrower has multiple mortgages from the same bank, such as a first and second mortgage, the failure to release each mortgage will constitute a separate offense under the statute. Or, where parties bring a class action or other multiparty suit, a defendant lender's failure to release each mortgage will constitute a separate offense giving rise to a separate $200 penalty. Therefore, since the Creditor Trust has identified only a single mortgage, the statutory penalty is limited to $200. While the Creditor Trust argues that $200 is too small of a penalty to discourage bad behavior by

banks, it is not for the courts to make policy by rewriting statutes - that is the job of the legislature.

## CONCLUSION

For the foregoing reasons, the Bank is ordered to prepare, execute and file or deliver a release of the Mortgage in accordance with 765 Ill. Comp. Stat. 905/2, and a judgment of $200 plus attorneys' fees and costs is awarded against the Bank and in favor of the Creditor Trust. The Court will entertain an application for attorneys' fees and costs filed on or before June 22, 2011.

A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE: June 8, 2011

The Honorable Manuel Barbosa
United States Bankruptcy Judge